IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SERGIO MOGOLLON, *et al.*, § § Plaintiffs, § § v. § Civil Action No. 3:19-CV-3070-N § THE BANK OF NEW YORK MELLON, § § Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

This Order addresses Plaintiffs' Motion for Class Certification and Designation of Class Representatives and Class Counsel [165]. Because the Court finds that New York law and the New York statute of limitations applies to the class, and because the New York statute of limitations would require extensive individual legal and factual inquiry, the Court finds that questions of fact and law common to the class do not predominate over questions affecting individual members. Therefore, the Court denies the motion. The Court also addresses Defendant's Motion to Strike Portions of Plaintiffs' Reply and Appendix in Support [185] and denies the motion as moot.

**I. ORIGINS OF THE MOTION**

This case arises out of R. Allen Stanford's massive Ponzi scheme. The facts of Stanford's scheme are well-established, *see, e.g.*, *Janvey v. Democratic Senatorial Campaign Committee, Inc.*, 712 F.3d 185, 188–89 (5th Cir. 2013), and are not recounted in great detail here. Reduced to its essence, Stanford's scheme involved the sale of

MEMORANDUM OPINION & ORDER – PAGE 1

fraudulent certificates of deposit ("CDs") issued by Stanford International Bank ("SIBL"), an offshore bank in Antigua. Although Stanford represented to investors that CD proceeds were invested in only low risk, high return funds, in reality the CD proceeds were used to finance Stanford's own extravagant lifestyle and pay off previous investors.

Named Plaintiffs Sergio Mogollon, Colleen Lowe, Ramon Malca, and Robert Powell are all investors who purchased CDs from SIBL between December 27, 2005, and February 16, 2009, the time period in which Bank of New York Mellon ("BNYM") engaged in a joint enterprise relationship with Stanford and Pershing LLC ("Pershing"). Pls.' Second Am. Compl. ¶¶ 1–4, 10, 73, 76 [133]. Plaintiffs' claims are based upon the legitimacy afforded to the scheme by BNYM's relationship with the Stanford entities. *Id.* ¶¶ 9–13. Plaintiffs contend that BNYM possessed a general awareness of Stanford's underlying fraud and provided substantial assistance to it by giving a false sense of legitimacy to the fraud to enable Stanford and his associates to defraud Plaintiffs. *Id.* ¶¶ 80–92. Plaintiffs bring claims of (1) aiding and abetting fraud, and (2) aiding and abetting breach of fiduciary duty. *Id.* Plaintiffs move now to certify a "class of all persons or entities who purchased or renewed certificates of deposit from Stanford International Bank Limited between December 27, 2005 and February 16, 2009 and still held those certificates of deposit as of February 16, 2009," excluding those connected to the defendant or Stanford Financial Group, investors who have resolved all claims, and residents of 25 jurisdictions that have been found not to give preclusive effect to a U.S. class action judgment. Pls.' Mot. Br. 31, 74 n.49 [166].

## II. CLASS CERTIFICATION LEGAL STANDARD

Plaintiffs may sue on behalf of a class only if the proposed class possesses: "(1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129 (5th Cir. 2005) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)); *see* FED. R. CIV. P. 23(a). Additionally, a party seeking class certification under Federal Rule of Civil Procedure 23(b)(3) must also show (1) "that questions common to the class members predominate over questions affecting only individual members and, (2) that class resolution is superior to alternative methods for adjudication of the controversy." *Feder*, 429 F.3d at 129 (citing FED. R. CIV. P. 23(b)(3)).

District courts have substantial discretion in determining whether to certify a class. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 408 (5th Cir. 1998). To operate within the framework of Rule 23, the Court must undertake a "rigorous analysis" of the proposed class action. *Unger v. Amedisys*, 401 F.3d 316, 320 (5th Cir. 2005). However, class certification determination should not be a "preliminary inquiry into the merits." *Id.* The Court will discuss the Rule 23(b)(3) requirements first because predominance and superiority pose the most significant challenges to this class certification.

### III. THE COURT DENIES THE MOTION FOR CLASS CERTIFICATION FOR LACK OF PREDOMINANCE

#### A. Choice of Law

As a threshold matter, the Court must perform a choice of law analysis to determine which issues predominate under the law governing the parties and the case. *See Cole v. Gen. Motors*, 484 F.3d 717, 724 (5th Cir. 2007) ("In a diversity class action . . . inherent in the predominance inquiry is a determination of which states' substantive laws will apply to the claims . . . because if multiple states' laws apply and those laws vary, the variations may impact whether common issues of law and fact predominate."); *Spence v. Glock GES.m.b.H.*, 227 F.3d 308, 313 (5th Cir. 2000) ("The district court is required to know which law will apply before it makes its predominance determination."); *Gyarmathy & Assocs., Inc. v. TIG Ins. Co.*, 2003 WL 21339279, at *2–3 (N.D. Tex. 2003) (Godbey, J.).

In this case, Plaintiffs bring two claims: aiding and abetting fraud and aiding and abetting breach of fiduciary duty. Pls.' Second Am. Compl. ¶¶ 80–92. Plaintiffs bring both of these claims under New Jersey common law. Pls.' Mot. Br. 33; *see* Mem. Op. & Order (Aug. 9, 2023) 9 n.5 [78] ("The parties agree that New Jersey law applies to both aiding-and-abetting claims."). However, while the parties agree that these claims are brought under New Jersey law, the parties disagree that New Jersey law applies to this case. *See* Def.'s Resp. 10 [167] ("BNY has *never* agreed, either explicitly or implicitly, to the application of New Jersey law to *any* aspect of this case." (emphasis in original)), *but see* Pls.' Mot. Br. 68 n.1 (arguing that BNYM waived choice of law analysis because it

cited to New Jersey law in its analysis of Plaintiffs' aiding and abetting claims in its motion to dismiss)[1].

The Court finds that BNYM has not waived its right to a fulsome choice of law analysis. The cases Plaintiffs cite for estoppel contemplate situations where choice of law was raised on appeal. Pls.' Mot. Br. 68 n.37 (*citing Williams v. BASF Catalysts LLC*, 765 F.3d 306, 316 (3rd Cir. 2014) and *Thompson & Wallas of Memphis Inc. v. Falconwood Corp.*, 100 F.3d 429, 434 (5th Cir. 1996)). The Court finds that merely citing to New Jersey law in the prior motion is not sufficient to show waiver or acquiescence. A motion for class certification is an appropriate time to undertake a choice of law analysis, therefore the Court does so here.

***1. The Court applies New Jersey choice of law rules in this case.*** — "Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied." *In re Air Disaster at Ramstein Air Base*, 81 F.3d 570, 577 (5th Cir. 1996) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964), and 28 U.S.C. § 1407). Because this case was originally filed in the United States District Court of New Jersey and transferred to the Northern District of Texas by the Judicial Panel on Multi-District Litigation, the Court applies New Jersey choice of law rules.

---

[1] In BNYM's motion to dismiss, it argued that it was not subject to personal jurisdiction in New Jersey and raised in that motion that it did not believe that New Jersey law would ultimately apply to the claims. *See* Def.'s Mot. Dismiss 15–17 [20]. Therefore, it is incongruous for Plaintiffs to assert that BNYM raises "a contrary position for the first time" in this motion. Pls.' Mot. Br. 68 n.37.

MEMORANDUM OPINION & ORDER – PAGE 5

***2. The Court finds that New York has the most significant relationship to the claims.*** — In diversity cases, federal courts "apply the choice-of-law rules of the forum state." *See Scott v. PNC Bank, Nat'l Assn.*, 785 F. App'x 916, 919 (3d Cir. 2019) (unpub.) (quoting *Pac. Emps. Ins. Co. v. Glob. Reins. Corp. of Am.*, 693 F.3d 417, 432 (3d Cir. 2012)). New Jersey applies the Second Restatement of Conflict of Laws approach to resolve choice of law issues with respect to the statute of limitations and substantive tort law. *See McCarrell v. Hoffmann-La Roche, Inc.*, 153 A.3d 207, 210 (N.J. 2017); *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008).

BNYM argues that the alleged activity "that supposedly aided and abetted the Stanford Ponzi scheme took place, not in New Jersey, but in New York, where BNY is chartered and headquartered," and thus that New York, not New Jersey, may have the most significant relationship to the claims here. Def.'s Resp. 12 [167]. BNYM also raises that "the home jurisdiction where each allegedly defrauded investor received and relied on false representations clearly has an interest in the litigation." *Id.* at 13. The Named Plaintiffs are currently residents of Florida, Columbia, and Jamaica. Pls.' Second Am. Compl. ¶¶ 1–4. However, BNYM points out that Plaintiffs have provided no information about their location at the time they received false representation about and purchased SIBL CDs or where any financial advisors who allegedly breached fiduciary duties were located when the breaches occurred. Def.'s Resp. 13. The proposed class spans all 50 states and up to 170 countries. *Id.* at 15.

"The first inquiry in any choice-of-law analysis is whether the laws of the states with interests in the litigation are in conflict." *McCarrell v. Hoffmann-La Roche, Inc.*, 153

MEMORANDUM OPINION & ORDER – PAGE 6

A.3d 207, 216 (N.J. 2017). "If there is no actual conflict, then the choice-of law question is inconsequential, and the forum state applies its own law to resolve the disputed issue." *Rowe v. Hoffman-La Roche, Inc.*, 917 A.2d 767, 621 (N.J. 2007). However, "when a complaint is timely filed within one state's statute of limitations but is filed outside another state's, then a true conflict is present." *McCarrell*, 153 A.3d at 216.

The laws of the states with interests in the litigation are in conflict. BNYM argues three possible alternatives that may succeed at a choice of law analysis: either New Jersey law applies to all class members, New York law applies to all class members, or the laws of various jurisdictions would apply individually to different class members based either on the location where they received and relied on the fraudulent representations. *See* Def.'s Resp. 13. New Jersey law and New York law are substantially similar apart from New York's more stringent statue of limitations. *See* Def.'s Resp. App. APP-0589–94 [168] (providing a comparison chart between the laws of different states); Pls.' Reply 16–18 [170]. However, because New York's statute of limitations is a borrowing statute,[2] and New Jersey's is not, if New York law and its statute of limitations were to apply, it would create substantial issues of fact as to where each class member's claim accrued and require

---

[2] When the claim accrues outside New York and the plaintiff is a nonresident at the time of accrual, the New York statute of limitations requires courts to compare the statute of limitations laws of the place of accrual with that of New York and apply whichever is shorter, thereby "borrowing" the statute of limitations of the foreign jurisdiction if the statute limits or bars the claim before New York law otherwise would. *See* N.Y. C.P.L.R. § 202:1; *Global Financial Corp. v. Triarc Corp.*, 715 N.E.2d 482, 480–81 (explaining that this "requires the cause of action to be timely under the limitation periods of both New York and the jurisdiction" of accrual to "prevent[] nonresidents from shopping in New York for a favorable Statute of Limitations").

MEMORANDUM OPINION & ORDER – PAGE 7

the Court to sort through the various statutes of limitations for the many jurisdictions implicated in this action. *See* N.Y. C.P.L.R. 202; Def.'s Resp. 12 n.4; Pls.' Reply 17. Next, the more varied jurisdictions where class members were injured or where the fraudulent representations were made present a greater conflict of laws. In many of the potentially interested jurisdictions, the torts of aiding and abetting fraud or breach of fiduciary duty do not exist, and the standards vary greatly between the jurisdictions where they do. *See generally* Def.'s Resp. App. Ex. 35 (charting the differences between the laws of the potentially implicated jurisdictions). Therefore, because the laws of the interested jurisdictions are in conflict, the Court must determine choice of law.

For tort claims such as here, New Jersey follows the most significant relationship test outlined in the Second Restatement. *Camp Jaycee*, 962 A.2d 453, 458–60 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145). That test takes into account:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(a)–(d).

The Court agrees with Plaintiffs that case law supports that the location where the BNYM's actions were centered is of primary relevance in an aiding and abetting fraud and breach of fiduciary duty in a case such as this. *See* Pls.' Mot. Br. 67–68 (citing *Gruber v. Price Waterhouse*, 117 F.R.D. 75 (E.D. Pa. 1987), and *Gevaerts v. TD Bank, N.A.*, 56 F. Supp. 3d 1335, 1340 (S.D. Fla. 2014)); Pls.' Reply 15 (citing this Court's prior decisions

in *Sanford v. Pershing, LLC*, 2024 WL 1748604 (N.D. Tex. 2024) (Godbey, C.J.) and *McCleod v. Pershing, LLC*, 2024 WL 3333237 (N.D. Tex. 2024) (Godbey, C.J.), where the Court found New Jersey law applied to similar claims in the same MDL against Pershing, which is headquartered in New Jersey[3]). Because the facts of this case center on BNYM's relationship with SIBL, not the individual investors, and there is no allegation that BNYM made any direct representations to Plaintiffs or had any relationship with the Plaintiffs, the analysis of where the harm occurred is different than in a typical fraud case, where the analysis looks at the representations and locations of the parties during the relationship. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148 (2) (listing factors for determining most significant relationship in a fraud case). Therefore the Court finds that the location of the bank's actions carries the most weight to show the most significant relationship.

BNYM is a New York state chartered bank with headquarters in New York. Pls.' Second Am. Compl. ¶ 5. Pershing, BYNM's sister company, is headquartered in New Jersey.[4] Plaintiffs argue that New Jersey law applies, citing to the same evidence presented to establish minimum contacts with New Jersey to overcome a motion to dismiss for lack of personal jurisdiction. Pls.' Reply 10 (citing Mem. Op. & Order (Aug. 9, 2023) 4–5).

---

[3] Plaintiffs believe that these cases demonstrate that New Jersey law applies in this case, arguing that the fact that those cases were against Pershing, not BNYM, is "irrelevant." Def.'s Reply 15. The Court disagrees. Those cases were against Pershing, a New Jersey company. This case is against BNYM, a New York company. Therefore, the difference between the defendants clearly affects the choice of law analysis.

[4] Plaintiffs argue in their motion that Pershing is a "wholly owned subsidiary of BNYM." Pls.' Mot. Br. 3. Defendants in turn provide evidence in the response that Pershing and BNYM are both wholly owned subsidiaries of the same parent corporation. Def.'s Resp. 4.

MEMORANDUM OPINION & ORDER – PAGE 9

This evidence appears to be that BNYM had two meetings with Stanford in New Jersey and communications with Pershing in New Jersey, including "due diligence emails, marketing materials, and conference calls." Mem. Op. & Order (Aug. 9, 2023) 5.[5] While the Court found that these events establish sufficient minimum contacts, the Court finds that both by a quantitative and qualitative measure, such actions are insufficient to show the most significant relationship. The Court is unconvinced that two meetings with Stanford in New Jersey and a number of communications going to both New York and New Jersey[6] establishes that New Jersey had the most significant relationship. Plaintiffs also raise that several "dual role employees" were based in New Jersey. Pls.' Reply 11.[7]

---

[5] Plaintiffs also purport to introduce more evidence in support of the New Jersey contacts in the Reply, which is the subject of BNYM's motion to strike. *See* Pls.' Reply 10–12; Def.'s Mot. Strike [185]. Plaintiffs cite only to 18 pages of the 413-page appendix of evidence, and the Court declines to delve deeper into the reply appendix than that which is cited in the brief. The portions to which Plaintiffs cite appear to reference the meetings and emails previously raised. The Court finds that the portions of the reply that introduce new evidence do not affect its analysis here, and thus denies the motion to strike as moot.

[6] The Court has reviewed Plaintiffs' appendix and finds that many of the emails appear to have been sent to a mixed audience of Pershing and BNYM employees, *see, e.g.*, Pls.' Mot. App. APP-010 (listing three Pershing employees and two BNYM employees as included in the email chain), thereby demonstrating that the actions spanned New York and New Jersey, and lessening the weight of evidence proving that the email demonstrates a more significant relationship with either one.

[7] Plaintiffs list two employees, Richard Brueckner and George "Tres" Arnett, and provide evidence that they were based in New Jersey. *Id.* Brueckner was Pershing's CEO (and later became BNYM Senior Executive VP) and Arnett was Pershing's general counsel. Pls.' Mot. Br. 9 n.6, 19. Arnett was also a liaison member of BNYM's International Reputational Risk Committee ("IRRC"), which Plaintiffs allege did not review the Stanford relationship. Pls.' Mot. Br. 10, 15; Pls.' Mot. App. APP-825. It is unclear how Plaintiffs allege these two employees were BNYM's employees based in New Jersey, as both appear to be Pershing employees based out of New Jersey, where Pershing was located.

MEMORANDUM OPINION & ORDER – PAGE 10

While Plaintiffs' motion conflates much of the action taken by Persing and BNYM, the Court finds that there is no basis to pierce the veil between these two companies to find that actions taken by Pershing employees in New Jersey should be weighed to show that New Jersey had the most significant relationship to the claims. BNYM is a New York based company that appears to do most of its work out of its New York office, and the contacts described are insufficient to show that New Jersey had a more significant relationship to these claims. Therefore, the Court finds that New York, not New Jersey, has the most significant relationship to the claims and applies New York law.

***3. The Court finds that the New York statute of limitations applies to these claims.*** — Because there is a conflict between the statutes of limitations for New Jersey and New York, the Court must undertake a secondary analysis to determine whether New York or New Jersey statute of limitations applies to these claims. For statutes of limitations, New Jersey applies the Second Restatement's Section 142 presumption that "the statute of limitations of the forum state generally applies whenever that state has a substantial interest in the maintenance of the claim." *McCarrell*, 153 A.3d at 221. This is a lower standard than the most significant relationship test, because the analysis does not progress to whether an alternative state has a more significant relationship to the parties and occurrence unless the court first finds that New Jersey has no significant interest in the maintenance of the claim. *Id.*

Here, none of the Named Plaintiffs are domiciled in or have any connection to New Jersey, and the defendant corporation is neither incorporated in nor headquartered in New

MEMORANDUM OPINION & ORDER – PAGE 11

Jersey. As discussed in the previous section, the only contacts Plaintiffs cite to show a connection to New Jersey are BNYM's contacts with Pershing.

New Jersey courts have found no substantial interest where (1) the plaintiff was a New Jersey resident and conducted part of his business out of New Jersey but the legal claim arose from professional activities in another state, *Pitcock v. Kasowitz, Benson, Torres & Friedman, L.L.P.*, 46 A.3d 586, 589 (N.J. App. Div. 2012); (2) where a plaintiff had a principal place of business in New Jersey but the operative facts of the case were centered in another state, *JZS Madison, LLC v. Kramer Levin Naftalis & Frankel, LLP*, 2024 WL 4112555, at *3 (N.J. App. Div. 2024); (3) where a defendant corporation was incorporated in New Jersey but the product at the center of the claim was manufactured and sold outside of New Jersey, *see McCarrell*, 153 A.3d at 216–17 (discussing the shift from governmental-interest test to no significant relationship, abrogating *Heavner v. Uniroyal, Inc.*, 305 A.2d 412, 415 n.3 (1973), while affirming that the outcome would be the same under the new test). Therefore, the Court finds that New Jersey has no substantial interest in a case brought by plaintiffs with no connection to New Jersey against a New York bank that operated mostly out of New York but did business with a New Jersey corporation, even where the claim regards the outcome of a partnership between the corporations.

Because the Court finds no significant interest, and the Court has already determined that New York has a more significant relationship to the parties and the occurrence, the New York statute of limitations applies to these claims.

MEMORANDUM OPINION & ORDER – PAGE 12

### *B. Predominance*

Having determined that New York substantive law and the New York statute of limitations applies to this case, the Court then turns to whether common issues predominate.

New York's statute of limitations uses a borrowing statute. N.Y. C.P.L.R. 202; *see* Def.'s Resp. 12 n.4; Pls.' Reply 17. Therefore, even if the substantive law of New York could apply to the class more uniformly, there is a strong likelihood that the statute of limitations for each of the class members' states or countries of residence will apply to their claims under the New York statute of limitations. Under the statute, "when the claim accrued outside New York and the plaintiff was a nonresident at the time the claim accrued . . . [the Court] must compare the limitations law of the place of accrual with that of New York and apply whichever is shorter." N.Y. C.P.L.R. 202:1. "Critical to the application of the borrowing statute is the determination of the jurisdiction in which a cause of action 'accrues.'" *Martin v. Julius Dierck Equip. Co.*, 374 N.E.2d 97, 99 (N.Y. 1978). "[W]hen the claimed injury is economic, the cause of action typically accrues 'where the plaintiff resides and sustains the economic impact of the loss.'" *Norex Petroleum Ltd. v. Blavatnik*, 16 N.E.3d 561, 565 (N.Y. 2014) (citing *Global Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482, 485 (N.Y. 1999)); *see Gordon & Co. v. Ross*, 63 F. Supp. 2d 405, 408 (S.D.N.Y. 1999) ("In securities fraud cases . . . courts have regularly held that the place of accrual for borrowing statute purposes is where the plaintiff resides.").

This borrowing statute would require fact-intensive discovery for the locations where each of the Plaintiffs resided at the time relevant in this case. Furthermore, the Court

would be required to examine the statutes of limitations of all the relevant jurisdictions, which, as discussed above, likely includes all 50 states and up to 170 countries, including the various tolls and extensions that those jurisdictions permit. Courts have found that individualized statute of limitations issues such as these are grounds to deny class certification. *See, e.g.*, *Ackerman v. Price Waterhouse*, 252 A.D.2d 179, 196 (N.Y. 1998); *Royal Park Inv. SA/NV v. HSBC Bank USA, N.A.*, 2018 WL 679495, at *6 (S.D.N.Y. 2018) ("The fact that a substantial number of class members' claims are time barred counsels against finding that common issues predominate.").

While "the existence of a meritorious defense does not necessarily defeat certification, affirmative defenses may be considered as a factor in the class certification calculus." *Weiss v. La Suisse, Societe D'Assurances Sur La Vie*, 226 F.R.D. 446, 454 (S.D.N.Y. 2005). Whether these claims can be brought at all under the various statutes of limitations will be a threshold question that will overwhelm the issues of this case, particularly in a class spanning so many jurisdictions. Therefore, the Court finds common questions of law and fact would not predominate in this case.

## CONCLUSION

The Court finds that because the applicable statute of limitations under New York law would raise individual questions of law and fact, the Rule 23 requirement for predominance is not met. Therefore, the Court denies Plaintiffs' motion for class certification.

Signed August 5, 2025.

_____
David C. Godbey
Chief United States District Judge